UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 824,

    Plaintiff,

vs.

                                                      Case No. 8:13-cv-2987-T-27TGW

VERIZON FLORIDA, LLC,

    Defendant.
_____/

## ORDER

**Before the Court** are competing motions for summary judgment arising from an arbitration award under a collective bargaining agreement ("CBA") setting. (Dkts. 19, 20). The motions present the unique question of whether an arbitrator, having finally addressed the merits of a CBA grievance, may reconsider and substitute an award which substantively changes the result, after being mistakenly persuaded that he had addressed an issue which was not to be arbitrated. Notwithstanding that judicial review of arbitration awards is narrow and deference is owed to the arbitrator, I find, under the circumstances presented, that the arbitrator in this case exceeded his authority in reconsidering his original award, and therefore the original award is due to be confirmed and the substituted award vacated. Accordingly, Verizon's Motion for Summary Judgment (Dkt. 19) is DENIED and the Union's Motion for Summary Judgment (Dkt. 20) is GRANTED.

### *Summary of Ruling*

The underlying arbitration was conducted to resolve a grievance filed by the Union on behalf of nine employees of Verizon. The employees' positions had been eliminated and Verizon had denied their right to "bump" into positions held by employees with less seniority pursuant to

"bumping" rights set forth in Article XI, Section 2 of the parties' CBA. That section provides that "[a]ny regular full-time employee, having more than twelve (12) months seniority, who has been laid off shall have the right to bump an employee with less seniority within the same or a lower wage progression schedule[.]" (Dkt. 16-2 at 228).

The Union's grievance was broadly worded, alleging a violation of Article XI, Section 2, the denial of "bumping" rights, and demanding that Verizon "abide by the language in Article XI, Section 2 and allow employees to "bump" into positions as negotiated between the parties." (Dkt. 16-2 at 425). Significantly, the parties declined to stipulate to the issue(s) to be arbitrated, essentially leaving it to the arbitrator to frame the issue(s) to be arbitrated, consistent with the law of this Circuit. Where, as here, the parties fail to agree on the issues to be arbitrated, the arbitrator's authority is determined by the parties' CBA and the request for arbitration. Effectively, the parties "empowered him to decide the issues stated in the grievance." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980). "The grievance itself becomes the submission agreement and defines the limits of the arbitrator's authority." *Id.*

Relying on the grievance, the arbitrator framed the issue, applied the CBA provision alleged to have been violated to the facts, and sustained the grievance as to two of the nine employees. Notwithstanding, in a post-hearing email request for reconsideration, Verizon persuaded the arbitrator that he had addressed an issue which had not been presented for arbitration, whether the affected employees had "previously held" the positions they desired to bump into. As a result, the arbitrator reversed his award and denied relief to all nine employees. In doing so, he exceeded his authority under the CBA. As the Union correctly asserts, "the Union's grievance established the

scope of the issues before the arbitrator, and the Union's grievance specifically cited the provision of the CBA that the arbitrator relied on to issue the Original Award." (Dkt. 23, p. 2).

As will be discussed, contrary to Verizon's urging, the issue which the original arbitration award addressed had been presented to the arbitrator through the Union's broadly worded grievance and he was therefore well within his authority in his original determination of the merits. And contrary to the common law doctrine of *functus officio*, the arbitrator exceeded his authority when he reconsidered and issued the substituted award. The substituted award is therefore due to be vacated and the initial award confirmed.

### *Background*

Plaintiff, the International Brotherhood of Electrical Workers, Local 824 ("the Union") is the certified bargaining agent for a bargaining unit that includes communications technicians employed by Defendant Verizon Florida, LLC ("Verizon"). (Dkt. 16-2 at 195).[1] The Union and Verizon are parties to a CBA which governed the hours, wages, and terms and conditions employment for the bargaining unit members, and includes a grievance process for any dispute arising out of the interpretation or application of the CBA. (*Id.* at 237-39). The CBA further provides that, if a dispute is not resolved through the grievance process, either party can demand that the grievance be submitted to an arbitrator for a final and binding decision. (*Id.* at 239-40).

In September 2012, Verizon declared a "surplus" that eliminated positions held by thirteen communications technicians represented by the Union. (Dkt. 16-1 at 311-12, 355). The CBA

---

[1] The parties filed a Joint Stipulated Record (Dkt. 16). The page citations for the exhibits (Dkts. 16-2 to 16-13) refer to the Bates numbers. The page citations for the hearing transcript (Dkt. 16-1) refer to the more specific transcript page numbers. The parties are to be commended for cooperating in the preparation and filing of the Joint Stipulated Record.

provides bargaining unit members with substantive rights in the event of a workforce reduction. (Dkt. 16-2 at 227-30). Those rights included "bumping rights" under Article XI, Section 2:

> 2.1  Any regular full-time employee, having more than twelve (12) months seniority, who has been laid off shall have the right to bump an employee with less seniority within the same or a lower wage progression schedule [.]
>
> . . . .
>
> 2.3  *An employee must have the ability to perform any job which he/she seeks to obtain through bumping. If it is a job which the employee has previously held, the employee will be allowed a reasonable period of time for re-familiarization and, if the job is one which he/she has not previously held, the employee must be able to perform the job with minimum additional training.*

(*Id*. at 228-29) (emphasis added). Accordingly, for an employee to have the requisite "ability" to perform a job, the employee must have either "previously held" the job under the first clause of Section 2.3, or be able to perform the job with "minimum additional training," under the second clause of Section 2.3.

Verizon asked each of the thirteen employees to complete a Workforce Reduction Checklist, in which the employees ranked their preferred alternative placements. (Dkt. 16-1 at 381; Dkt. 16-8 at 686; Dkt. 16-5 at 536-37; Dkt. 16-7 at 597-98). Verizon allowed four of the thirteen employees to bump into a preferred alternative placement because their preferred job was the same as the job they were already performing. (Dkt. 16-1 at 361-62). For each of the remaining nine employees, Verizon denied their requests to bump into alternative placements, finding that the employees would have required more than "minimum additional training." (*Id.* at 395-96). Specifically, Verizon denied requests by Chris Schwartz and Tom Alexander to bump into a Customer Zone Technician 1 ("CZT 1") position because they would need additional training. (*Id.* at 378-79, 386-87; Dkt. 16-8 at 726-28, 774-76).

4

*The Grievance*

On February 8, 2013, the Union filed its grievance, which alleged:

**Article(s) Violated**: Article II, Section 1, Paragraph 1.4, Article XI, Section 2 and any other Articles, Sections or Past Practices that may apply.

**Grievance Description**: On Tuesday, February 5, 2013, the Union was notified by the Company that employees currently in the "bumping" process would be denied from "bumping" into another position as the language provides for in the Collective Bargaining Agreement.

**Settlement Desired**: That the Company abide by the language in Article XI, Section 2 and allow employees to "bump" into other positions as negotiated between the parties.

(Dkt. 16-2 at 425). The Union exhausted the grievance steps without resolution of the dispute, and requested that the grievance proceed to arbitration. (Dkt. 16-2 at 426-30).

In June 2013, the parties participated in a two-day hearing before an arbitrator acting on behalf of the American Arbitration Association ("AAA"). (Dkt. 16-1 at 12, 294). As noted, the parties declined to stipulate to the issue(s) to be arbitrated, although it is undisputed that the single issue raised by the grievance was whether the affected employees had been denied their right to "bump" into positions held by employees with less seniority under Section 2. (Dkt. 16-2 at 425). The parties' arguments, testimony, and evidence during the hearing focused on the ability of the affected employees to perform the jobs they were seeking, including their training and experience. Significantly, however, for purposes of appreciating the arbitrator's original award and conclusion that five of the affected employees had"previously held" the positions they sought to bump into under Section 2.3, the evidence included testimony by several affected employees describing how they had been "on-loan" by management to the same positions they sought to bump into. (Dkt. 16-1).

5

On August 26, 2013, the arbitrator issued his "Arbitrator's Award." He determined that five employees "previously held" the positions they sought to bump into under the first clause of Section 2.3. The arbitrator further determined that two of those employees, Schwartz and Alexander, had requested CZT 1 positions and therefore should have been allowed to bump into those positions. As to the remaining employees, the arbitrator found that they would require more than "minimum additional training" under the second clause of Section 2.3, and that Verizon correctly declined to bump them into alterative positions. Accordingly, the arbitrator sustained the grievance in part, as to Schwarz' and Alexander's bumping rights. (Dkt. 16-13 at 916-925).

By letter dated August 28, 2013, the Union requested clarification. The Union maintained that two additional employees, Peter Alicea and Derrick Raborn, had "previously held" a CZT 1 position and should have been bumped into that position. (Dkt. 16-13 at 926-27). By email dated Friday, September 6, 2013, Verizon responded in opposition to the Union's request for clarification and requested reconsideration on an additional ground, which is the focus of Verizon's summary judgment motion.

Specifically, Verizon argued that whether an employee "previously held" a job under the first clause of Section 2.3 was not an issue properly before the arbitrator. Rather, Verizon maintained that the only relevant issues were the definition of "minimum additional training" under the second clause of Section 2.3, and whether Verizon properly exercised its discretion in finding that the affected employees would require more than minimum additional training. Verizon further argued that the arbitrator's findings as to Schwartz and Alexander were factually incorrect and rested on a misstatement of the applicable burdens of proof. As to the Union's request for clarification, Verizon maintained that Alicea and Raborn never held a CZT 1 position. (Dkt. 16-13 at 928-30).

6

On Monday, September 9, 2013, just three days after Verizon requested reconsideration, the arbitrator issued a substituted decision styled "Order on Cross-Motions for Clarification/Change and Substituted Arbitrator's Award." In particular, the arbitrator stated: "[u]pon review and deliberation, the arbitrator is persuaded that his earlier award did, in fact, partially rely on a contract provision not submitted for consideration." (Dkt. 16-13 at 933). The substituted award deleted the analysis as to whether any employee "previously held" a job, and denied the grievance as to all employees. (*Id*. at 939-41).

Subsequently, the Union filed this action, seeking confirmation of the arbitrator's original award and vacatur of the substituted award. (Dkt. 1). Verizon counterclaimed for confirmation of the substituted award and vacatur of the original award. (Dkt. 5). Following a case management hearing (Dkt. 14), the parties filed cross-motions for summary judgment (Dkts. 19, 20).

### *Standard*

Where, as here, only questions of law are involved, summary judgment is appropriate. *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Texas Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976), *cert. denied*, 429 U.S. 1095 (1977); Fed. R. Civ. P. 56(a) (summary judgment appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). Specifically, on judicial review of an arbitration award, "the only potential areas for consideration of factual questions that would preclude summary judgment concern whether the dispute actually was arbitrable and whether the award drew its 'essence' from the agreement." *Id*. The parties agree that the Union's grievance was arbitrable. The only factual question on review, therefore, is whether "the award draws its 'essence' from the collective bargaining agreement . . . ." *Aeronautical Machinists v. Lockheed,* 683 F.2d 419 (11th Cir. 1982) (quoting *Int'l Ass'n of*

*Machinists & Aerospace Workers, Dist. 776*, 538 F.2d at 1120-21). Stated differently, the interpretation of the CBA is exclusively for the arbitrator, and the court's sole function on review is to "determine whether the award drew its essence from the CBA. *Id.* Neither party contends that either award failed to draw its essence from the CBA. Rather, they challenge whether the arbitrator exceed his authority, which presents a question of law appropriate for summary judgment.

*Discussion*

Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, "governs suits to enforce or vacate an arbitration award arising out of a collective bargaining agreement." *United Steel v. Wise Alloys, LLC*, 642 F.3d 1344, 1352 (11th Cir. 2011). "A court may not vacate an arbitral award unless it is irrational, exceeds the scope of the arbitrator's authority, or fails to draw its essence from the collective bargaining agreement." *Id*. (internal quotation marks and alteration omitted). The standard of review is thus highly deferential: "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371 (1987).[2]

In the cross-motions for summary judgment, the parties focus their arguments on whether the arbitrator exceeded the scope of his authority in the initial award by addressing whether the affected employees previously held the positions they sought to bump into, and/or by reconsidering the initial

---

[2] Although the Federal Arbitration Act (FAA) does not apply to collective bargaining agreements, courts may look to the FAA for guidance when addressing labor arbitration cases under Section 301. *United Steel*, 642 F.3d at 1353 n.4. Indeed, drawing from arbitration principles under the Federal Arbitration Statute, 9 U.S.C. §§ 1, *et seq.*, federal policy favors arbitration, judicial review of the arbitration process is "severely limited," and arbitration awards are to be "reviewed narrowly." *Robbins v. Day*, 954 F.2d 679, 682 (11th Cir. 1992), *overruled on other grounds*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). And the unique context of arbitration "requires deferential judicial review to promote the primary advantages of arbitration—speed and finality." *Id.*

award. The Union's primary argument is that the arbitrator exceeded his authority when he reconsidered and issued the substituted award, which the Union asserts violated the common-law doctrine of *functus officio*. Conversely, Verizon argues that the arbitrator exceeded his authority when he issued the original award by deciding a legal issue not presented to him. These arguments are addressed in turn.

*1. Substituted award*

The doctrine of *functus officio* ("a task performed") provides that an arbitrator may not revisit the merits of an award once it has issued. *Office & Prof'l Emps. Int'l Union, Local No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 331 (3d Cir. 1999). Because the arbitrator acts only as judge for a particular case, the doctrine arises "based on the analogy of a judge who resigns his office and, having done so, naturally cannot rule on a request to reconsider or amend his decision." *Glass, Molders v. Excelsior Foundry Co.*, 56 F.3d 844, 846-47 (7th Cir.1995) (observing that an additional rationale is an arbitrator's susceptibility to *ex parte* communications, absent the constraint of judicial ethics). There are three established exceptions to *functus officio*, which allow an arbitrator to: (1) correct a mistake that is apparent on the face of the award; (2) rule upon an issue presented but not adjudicated; and (3) clarify an ambiguity in an otherwise complete award. *Brown v. Witco Corp.*, 340 F.3d 209, 219 (5th Cir. 2003); *Office & Prof. Emps.*, 186 F.3d at 331.[3]

Verizon first argues that *functus officio* is not implicated because the original award was not

---

[3] This Circuit has not substantively addressed *functus officio* in the arbitration context. *Cf. Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 n.9 (11th Cir. 2011) (not reaching question of whether *functus officio* would bar remand to original arbitrators). As Verizon argues, the continuing viability of *functus officio* has been questioned by some courts—considering the multiple exceptions and questionable rationale. However, it continues to be widely invoked and Verizon cites no authority suggesting that the doctrine has been abrogated. *See, e.g., Glass, Molders*, 56 F.3d at 847-48 (noting concerns but declining to abrogate doctrine); *Brown*, 340 F.3d at 218-19 (noting doctrine was more strictly enforced prior to 1957 pro-arbitration Supreme Court decision); *Red Star Express Lines v. Int'l Bhd. of Teamsters, Local 170*, 809 F.2d 103, 106 (1st Cir. 1987) (noting doctrine not "absolute" given its exceptions).

"final." In assessing whether an arbitration award is sufficiently final, courts typically examine the arbitrator's intent and whether significant issues were left outstanding. *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 720 (8th Cir. 1999); *see also United Steelworkers of Am., AFL-CIO-CLC v. Ideal Cement Co.*, 762 F.2d 837, 842 (10th Cir. 1985) (final award must be completed or executed by the arbitrator and delivered or declared).

In this case, the original award completely resolved the grievance on the merits. The arbitrator sustained the grievance as to Schwartz and Alexander, specifying the appropriate remedy, and found that the remaining employees were correctly denied bumping rights. (Dkt. 16-13 at 924-25). Verizon points to no record evidence suggesting that the arbitrator intended the original award to be anything other than final.

Alternatively, Verizon maintains that the substituted award falls within the exception to *functus officio* allowing an arbitrator to rule on an issue presented, but not adjudicated. In particular, Verizon argues that the arbitrator did not adjudicate the only issue properly before him, whether the employees could bump into positions with "minimum additional training." This argument is also without merit. In the original award, the arbitrator held that a prior arbitration decision supplied the definition of "minimum additional training" (not exceeding four weeks) and that Verizon correctly determined that the employees other than Schwartz and Alexander required more than four weeks training. (Dkt. 16-13 at 922-24). Clearly, the arbitrator did not fail to adjudicate the issue of "minimum additional training."

Verizon does not argue for the application of the other exceptions to *functus officio*, nor does it appear that those exceptions would apply. The exception for mistakes apparent on the face of the award applies "to clerical mistakes or obvious errors in arithmetic computation." *Colonial Penn Ins.*

*Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d. Cir. 1991). Here, rather than correcting clerical mistakes or obvious errors, the arbitrator made substantive changes to the award, effectively reversing himself and denying the grievance in its entirety. Similarly, the exception permitting clarification of an ambiguity has generally been applied to latent ambiguities, based on extraneous facts or circumstances arising after issuance of an award. *See Office & Prof. Emps.*, 186 F.3d at 333 (allowing exception where physician's unforeseen refusal to treat employee necessitated remand for clarification); *Brown*, 340 F.3d at 219 (where first award ordered back pay but parties were not able to reach agreement on calculation, arbitrator had authority to clarify the intent of his original order); *cf. Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir.1980) (noting that "the arbitrator did not alter his decision at all; he merely explained what he did and did not mean by it"). Verizon identifies no such ambiguity here.

In addition to the established exceptions to *functus officio*, the weight of authority holds that an arbitration award may be modified only if the parties consent. As the Fifth Circuit has stated: "in the absence of any contractual provision or formal arbitration rule expressly to the contrary, it seems clear that an arbitrator may exercise his power to clarify the terms of an award when he is asked to do so by parties mutually and without any party's objection within a reasonable period of time." *Brown*, 340 F.3d at 219 & n.10; *accord Colonial Penn Ins. Co.*, 943 F.2d at 331 & n.5; *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 342-43 (2d Cir. 2010); *Legion Ins. Co.*, 198 F.3d at 720.

Here, the record does not demonstrate the Union's consent to reconsideration of the original award. Although the Union did request clarification as to the denial of relief to employees Alicea and Raborn, Verizon opposed that request and sought reconsideration on an entirely different basis,

the scope of the arbitrator's authority.  Moreover, to the extent that consent could be implied by the Union's failure to respond to Verizon's request for reconsideration, it does not appear that the Union had a meaningful opportunity to respond.

The record indicates that the arbitrator issued the substituted award on Monday, September 9, 2013, in response to Verizon's emailed request for reconsideration three days before, on Friday, September 6, 2013.  (*See* Dkt. 16-13 at 928, 942).  Accordingly, the record does not demonstrate that the parties consented, either expressly or implicitly, to reconsideration of the original award.  *Cf. Brown*, 340 F.3d at 218-19 & n.10 (noting that, while parties consented to clarification of the same issue—calculation of back pay—a different situation would be presented if the union had not asked for clarification or it the union had formally objected to the company's request for clarification); *Colonial Penn Ins. Co.*, 943 F.2d at 331, 333 & n.5 (noting that party did not consent to reconsideration where it "at all times took the position that the first award needed no clarification" and that such clarification would exceed the arbitrators' limited authority to issue a clarification).

Based on the foregoing, the substituted award was entered in derogation of the doctrine of *functus officio* and is due to be vacated.  *Colonial Penn Ins. Co.*, 943 F.2d at 333.  The Union's remaining argument, that the substituted award was entered in violation of Rule 40 of the AAA's Labor Arbitration Rules, need not be discussed at length, other than to note that Rule 40 is generally consistent with the doctrine of *functus officio*, as it provides that an arbitrator is not empowered to redetermine the merits of a claim already decided.  Although Verizon disputes the application of Rule 40 to the facts of this case, Verizon provides no legal authority in support of that argument.

*2. Original award*

Assuming alternatively that the substituted award was improperly issued, Verizon argues that the original award should be vacated because it was outside the scope of the arbitrator's authority. Specifically, Verizon maintains that the question of whether any employee "previously held" a job was not an issue presented to the arbitrator. In response, the Union argues that consideration of that question was within the arbitrator's authority and seeks confirmation of the original award. Precedent supports the Union's contention.

"[T]he law is well-established that an arbitrator can bind the parties only on issues that they have agreed to submit to him." *Butterkrust Bakeries v. Bakery, Confectionery & Tobacco Workers Int'l Union, AFL-CIO, Local No. 361*, 726 F.2d 698, 700 (11th Cir.1984) (internal quotation marks omitted). As noted, however, absent a joint submission on the issues to be arbitrated, the scope of an arbitrator's authority is determined by the parties' CBA and the request for arbitration. *Piggly Wiggly Operators' Warehouse, Inc.*, 611 F.2d at 584. As the Fifth Circuit has reasoned, parties may enter into a written submission agreement or they may request that the arbitrator decide the written grievance, and where, as here, the parties elect the latter approach, "they have in effect empowered [the arbitrator] to decide the issues stated in the grievance. The grievance itself becomes the submission agreement and defines the limits of the arbitrator's authority." *Id.* at 583-84; *Waverly Mineral Prods. Co. v. United Steelworkers of Am., AFL-CIO, Local No. 8290*, 633 F.2d 682, 685-86 (5th Cir. 1980) (internal quotation marks omitted) ("We think it was for the arbitrator to decide just what the issue was that was submitted to it and argued by the parties.").

The authority of the arbitrator is addressed in Article XVII, Section 8 of the parties' CBA:

> The arbitrator shall have jurisdiction and authority to interpret, apply, or determine compliance with the provisions of this Agreement or of any agreement made

> supplementary hereto and to render decision of award thereof, but shall have no authority to add to, *subtract from*, alter, or modify in any way, the provisions of this Agreement or any established routines, procedures, rules, regulations, or practices of the Company. *The arbitrator shall also be limited in his/her authority to a review and determination of the specific grievance submitted for arbitration. The decision of the arbitrator, within the scope of this paragraph of Article XVII, shall be final and binding upon both parties.*

(Dkt. 16-2 at 240) (emphasis added).

As discussed below, for whatever reason, the parties declined to stipulate to the issues before the arbitrator. Indeed, the grievance and demand for arbitration were broadly drafted, alleging generally a violation of Article XI, Section 2 based on the denial of bumping rights, without any limitation on the issues to be arbitrated. (Dkt. 16-2 at 425, 430). The grievance was broad enough to be understood as a general challenge to the alleged bumping violation under Article XI, Section 2 of the CBA. Consistent with the broadly worded grievance, the arbitrator framed the issue, without the limitation Verizon urges:

> Whether the Company violated the Article XI rights of the several Communications Technicians who were the subject of the Company's September 2012 declaration of surplus at its Bartow, Orlando, Safety Harbor, and Tampa locations, and, if so, what shall the remedy be?

(Dkt. 16-13 at 917).

In his original award, the arbitrator correctly acknowledged that an employee had bumping rights under Article XI, Section 2.3 if the employee "previously held" the job, or if the employee could perform the job with "minimum additional training." The arbitrator then adjudicated both of those questions, finding that five of the affected employees had previously held the job they desired to bump into, two should have therefore been allowed to bump into the positions they requested, but that the others would require more than minimum additional training. (Dkt. 16-13 at 923-24).

Accordingly, in accordance with the CBA, the arbitrator's identification and disposition of

14

the issues raised by the grievance was well within the scope of his "authority to interpret, apply, or determine compliance with the provisions of this Agreement or of any agreement made supplementary hereto and to render decision of award thereof . . . ," since the Union's grievance was a general challenge to Verizon's decision regarding the bumping rights of the affected communication technicians. *See Waverly Mineral Prods. Co.*, 633 F.2d at 685-86; *Piggly Wiggly Operators' Warehouse, Inc.*, 611 F.2d at 583-84; *see also IMC-Agrico Co. v. Int'l Chem. Workers Council of United Food & Commercial Workers Union, AFL-CIO*, 171 F.3d 1322, 1326 (11th Cir. 1999) (where issue submitted to arbitrator was whether there was just cause for employee's termination, arbitrator did not exceed his authority in deciding that the specific discipline imposed was excessive). Likewise, the arbitrator complied with the terms of the CBA by undertaking "a review and determination of the specific grievance submitted for arbitration," and his award was therefore "final and binding upon both parties." (Dkt. 16-2 at 240).

Moreover, even if the parties' intent is considered, a different result is not warranted.[4] While the Union may have focused much of its argument during the hearing on whether minimum additional training was required, it consistently stated the issue more broadly as whether the employees had the "ability" to perform the job and presented evidence without objection from Verizon that several of the affected employees had previously held the positions they sought to bump into and therefore had performed the relevant job duties. (Dkt. 16-1 at 17, 20, 25, 26, 184-86, 258-262, 275). And in its post-hearing brief, the Union framed the issue as dealing with "ability" and

---

[4] Although binding authority in this Circuit defers to an arbitrator's statement of the issue, the Third Circuit Court of Appeals has stated that "[i]t is the parties, not the arbitrator, who decide the issues submitted; absent a formal, written submission, we must look to the parties' conduct as a whole." *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 114 (3d Cir. 1996) (citing *Int'l Chem. Workers Union, Local No. 566 v. Mobay Chem. Corp.*, 755 F.2d 1107, 1110 (4th Cir.1985)).

training, both "on-the-job" or "minimum required:"

> The entirety of this case has to do with *ability and training, whether it is on-the-job, formal, classroom, minimum required*, and the timeframes associated with the training. The Union has proven that the employees in the bumping procedure possess skills to perform job duties within the Central Office (CZT 1) and Broadband (BZT 1) with minimum additional training.

(Dkt. 16-13 at 866) (emphasis added).

The Union argued that "many of the Comm Techs have and are continuing to perform job duties of both CZT 1's and BZT 1's" and that "[t]he Company cannot utilize the employee's skills to occasionally serve in a position and later argue there would be more than minimum additional training required" . . . "The Union agrees and believes these Comm Techs were able to show that they had the ability and were able to perform CZT 1 and BZT 1 job duties while being on-loan to those positions **at the direction of management**." (Dkt. 16-13, at 859, 863) (emphasis in original). In the closing portion of the brief, the Union similarly argued that the grievance should be sustained because the employees had the requisite "ability," without focusing on either the first or second clause of Section 2.3. (*Id*. at 872).

Consistent with the Union's evidence and argument, the arbitrator addressed the issue presented to him by the Union and found in his original award that "[f]ive of the nine affected employees had been 'on-loan' from their ordinary billet, to work as either CZT-1s or BZT-1s for varying periods of up to eighteen months," and that "they have each 'previously held' those positions." (Dkt. 16-13 at 923). And this interpretation and determination was entirely consistent with the CBA. Under Section 2.3, "ability" may be demonstrated by an employee having "previously held" a job, and the Union did not, therefore, waive consideration of that portion of Section 2.3. Likewise, in its opening remarks to the arbitrator, Verizon stated that "[w]e do believe

16

that you have to look at Article XI, Section 2.3 vis-a-vis some issues in the case" —without indicating which portion of Section 2.3 was at issue. (Dkt. 16-1 at 17). Indeed, Verizon also specifically acknowledged the "previously held" language in Section 2.3 during its opening remarks. (*Id*. at 31, 39).

In its post-hearing brief, Verizon focused more specifically on the issue of minimum additional training. (*E.g.*, Dkt. 16-13 at 880, 899-913). However, at no point did Verizon question the arbitrability of the grievance as submitted, the scope of the arbitrator's authority, or the applicability of Section 2.3 in its entirety. It was only after suffering an adverse award that Verizon sought to limit the issues before the arbitrator. *See Piggly Wiggly Operators' Warehouse, Inc.*, 611 F.2d at 584 (noting that neither party questioned the arbitrability of the dispute, and that the employer sought to raise a question regarding the arbitrator's authority only after the issue was decided adversely to the employer); *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732-34 (9th Cir. 2006) (party's failure to object to issue, as stated in the demand for arbitration, manifested assent to arbitrator's authority); *Nat'l Gypsum Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 147 F.3d 399, 402-03 (5th Cir. 1998) (noting that company impliedly consented to allow arbitrator to frame issue where parties disagreed as to issue and company failed to object to arbitrator's authority).

Accordingly, even considering the parties' intent and presentations during the hearing, nothing limited the authority of the arbitrator to frame the issues and interpret and apply Section 2.3 in its entirety to the grievance. Consistent with the CBA, the arbitrator therefore properly considered and adjudicated whether the affected employees "previously held" the jobs they sought to bump into, and his original award was "final and binding upon both parties." (Dkt. 16-2 at 240). He was therefore without authority to reconsider and limit the application of Section 2.3 as Verizon

17

in its entirety to the grievance. Consistent with the CBA, the arbitrator therefore properly considered and adjudicated whether the affected employees "previously held" the jobs they sought to bump into, and his original award was "final and binding upon both parties." (Dkt. 16-2 at 240). He was therefore without authority to reconsider and limit the application of Section 2.3 as Verizon convinced him to do. (Doc. 16-2, at 240; CBA Article XVII, SECTION 8: "The arbitrator . . . shall have no authority to add to, subtract from, alter, or modify in any way, the provisions of this Agreement . . .").[6]

## *Conclusion*

Accordingly, it is **ORDERED**:

(1) Defendant's Motion for Summary Judgment (Dkt. 19) is **DENIED**. Plaintiff's Motion for Summary Judgment (Dkt. 20) is **GRANTED**.

(2) The arbitrator's substituted award, dated September 9, 2013, is **VACATED**. The arbitrator's original award, dated August 26, 2013, is **CONFIRMED.**

(3) The Clerk is directed to enter judgment in favor of Plaintiff and **CLOSE** this case.

**DONE AND ORDERED** this  8th  day of January, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[6] Verizon does not seek vacatur of the original award on any other established ground, including that the award is irrational or fails to draw its essence from the CBA. *United Steel*, 642 F.3d at 1352.